### BARNES v. CREIGHTON et al.

No. 10074.

Court of Civil Appeals of Texas. Austin.

Nov. 12, 1952.

Rehearing Denied Nov. 26, 1952.

Geo. K. Holland, Dallas, for appellant.

Strassburger, Price, Kelton, Miller & Martin, Dallas, by Royal H. Brin, Jr., Dallas, for appellees.

GRAY, Justice.

On February 15, 1941, Jefferson Standard Life Insurance Company issued a life insurance policy (No. 727,036) to Brazilton Blanton Barnes whereby it agreed to pay $10,000. This policy named as beneficiary "Helen Elizabeth Barnes, wife, if living, otherwise to June Colleen Barnes, Daugh-

ter." On February 23, 1942, the beneficiaries were changed, by endorsement on the policy, to provide that the amount due on the policy should be apportioned and paid: to June Colleen Barnes, daughter, two shares; to Youda Barnes, mother, one share, and to Helen Elizabeth Curry Barnes, former wife of the insured, one share. The further conditions of the endorsement are not material here.

On December 3, 1943, Jefferson Standard Life Insurance Company issued to Brazilton Blanton Barnes a life insurance policy (No. 806,705) whereby it agreed to pay $15,000. This policy named the beneficiaries·and provided that the proceeds of this policy should be paid: one-half to June Barnes, daughter; one-sixth to Lucille Barnes, wife; one-sixth to Youda Barnes, mother, and one-sixth to Clara Barnes, sister.

On April 18, 1950, Brazilton Blanton Barnes executed his will, paragraph two of which is:

"I give, devise and bequeath unto my beloved wife, Pauline Barnes, all the property of which I may die seized and possessed, real, personal and mixed, and wheresoever located, for her to have, hold and dispose of as she may see fit.

"At the present time, I have life insurance as follows:

"Jefferson Standard Life Insurance Company policy No. 727–036, for the sum of $10,000.00;

"Jefferson Standard Life Insurance Company policy No. 806–705, for the sum of $15,000.00;

"Farmers & Bankers Life Insurance Company policy No. 50120, for the sum of $2500.00.

"Each of these three policies is being made payable solely to my wife. This information is given for the identification of my life insurance. It is not to be considered a part of my estate."

This will named and appointed Pauline Barnes independent executrix. The will further provided that the debts of the tes-

tator should be paid, by his executrix, out of his estate, and in the event Pauline Barnes did not survive the testator all of his property was demised and bequeathed to his daughter, Mrs. June Barnes Creighton, who in that event was named and appointed independent executrix.

Brazilton Blanton Barnes borrowed money on the Farmers and Bankers Life Insurance Company's policy mentioned in his will and at that time changed the beneficiary in that policy to Pauline C. Barnes. The requirements for a change of beneficiary in that policy is not shown.

Brazilton Blanton Barnes died February 13, 1951. His will was admitted to probate and Pauline Barnes qualified as independent executrix of his estate and the insurance company was notified of the contents of the will.

Brazilton Blanton Barnes was married three times. His two former wives, Helen Elizabeth Curry Barnes (Koches), Lucille Barnes (Knight) and Pauline C. Barnes, his surviving wife, all survived him. He also left surviving him, one daughter, June Barnes Creighton; his mother, Youda Barnes, and two sisters, one of whom was Clara Barnes Sabik.

This suit was filed by June Barnes Creighton, Lucille Barnes Knight, Clara, Sabik, Helen Elizabeth Barnes Koches, joined by their husbands, and Youda Barnes against Jefferson Standard Life Insurance Company seeking recovery of the amount due on the two above described insurance policies. The insurance company answered, impleaded Pauline C. Barnes, the surviving wife of Brazilton Blanton Barnes; disclaimed any interest in the proceeds of the policies except to pay the same to the party, or parties, entitled to receive it; paid the proceeds into the registry of the court, and prayed that the proceeds be paid to the parties as their right thereto should be determined, and that it be allowed a reasonable attorney's fee.

Pauline C. Barnes answered individually and as independent executrix, alleged that by the will of Brazilton Blanton Barnes she was made sole beneficiary of the two policies. She alleged that the insurance company had waived any rights it had to object to a change of beneficiaries and to require an endorsement of such change on the policies.

As to a change of beneficiaries each of the policies provided:

"Provided this policy be not assigned, the Insured may at any time, and from time to time, change the Beneficiary hereunder, such change to take effect upon the written endorsement of the same upon the policy by the Company. * * *"

The record shows that Pauline C. Barnes was married to Brazilton Blanton Barnes October 12, 1949, and that prior to that time he was divorced from Helen Elizabeth Barnes—Koches, and Lucille Barnes—Knight.

Lucille Barnes Knight, joined by her husband, filed disclaimer to the proceeds of the two policies.

The parties (except the insurance company) filed motions for summary judgment. The trial court heard the motions "and upon the motions, pleadings, and upon the evidence introduced" rendered judgment that Helen Elizabeth Barnes Koches, Lucille Barnes Knight (and their husbands) take nothing, and that Pauline C. Barnes individually is without any interest in the proceeds of the policies. Further the judgment awarded the insurance company an attorney's fee, and, after deducting the attorney's fee, awarded June Barnes Creighton, Youda Barnes and Clara Sabik the shares of the proceeds of the policies as therein directed, and to Pauline C. Barnes, independent executrix, recovery of the balance due under the policies.

Only Pauline C. Barnes, individually and as independent executrix, has appealed. She appeals from that part of the judgment adverse to her, however, she does not complain of the allowance of an attorney's fee to the insurance company.

It will be borne in mind that the provision contained in the policies providing for a change of beneficiary, quoted

supra, does not designate any method for making the change. It simply provides that the change shall take effect upon the written endorsement of the change upon the policy by the company. This condition was for the benefit and protection of the company, and provided for the doing of a ministerial act which it was authorized to do by the policy. It of course could not make the endorsement to the prejudice of vested interests.

■■ The company had notice of adverse claims to the proceeds of the two policies and was not authorized to pay the proceeds to the beneficiaries therein named. Vernon's Ann.Ins.Code, Art. 3.48. The quoted provision of the policies does not provide that the endorsement must be made during the lifetime of the insured nor that it could not be made after his death. Therefore, the fact that the endorsement was not made prior to the death of the insured is not decisive of the question before us. Adams v. Adams, Tex.Civ.App., 78 S. W.2d 664, error dism.

■■ The company elected to pay the proceeds of the two policies into court and abide the decision of the court as to the parties entitled to receive the same. By so doing it waived performance of the condition and did not prejudice the rights of the parties. 20 Am.Jur. p. 991, sec. 1324. Appellees had no vested interest in the proceeds of the policies during the lifetime of the insured, and are not now in position to object to a waiver by the company of a condition which is for its benefit and protection. Splawn v. Chew, 60 Tex. 532.

■ Since a change of the beneficiary named in the policies could be made by the insured during his lifetime, the change could be made by his will. Splawn v. Chew, supra; 24 Tex.Jur. Sec. 74, p. 778; 46 C.J.S., Insurance, § 1176, p. 84.

A reading of that portion of the will above quoted (and a consideration of the further provisions thereof) clearly demonstrates that the testator was fully aware that the three insurance policies were issued to him and that (under the facts) it was his right to direct, by naming the beneficiary, to whom the proceeds would be paid. He also knew that if his wife Pauline was to receive the proceeds it was necessary for him to name her as beneficiary. This conclusion is justified not alone from the language of the will but also by the circumstance that prior to the execution of the will the testator had changed the beneficiaries in policy No. 727,036, which was done by endorsement on the policy. This fact is evidence that he knew of the requirement of the policy requiring endorsement on the policy by the company to give effect to the change, but we are in no position to say that he did not also know that the endorsement was for the benefit of the company and that no particular form and no particular words were required for making a change of beneficiaries.

The evidence (deposition of appellant) shows that prior to November, 1950, the testator kept the policies in a safety deposit box at which time he got them and gave them to appellant. After that time they were kept in a drawer of the testator's desk at his and appellant's place of business.

■ We think the rule that the insured is required to do all that he reasonably could do to bring about a change of beneficiary in accordance with the policy provisions is not applicable to the question before us for the reason that the policies contained no requirement that the change of beneficiary be accomplished in any specific manner but provided only that the change must be endorsed on the policy by the company. (We have already discussed this requirement.) From the language of the will and from the other facts and circumstances, it appears that the testator knew that his wife would not receive the proceeds of his life insurance policies unless he so changed them as to name her as the beneficiary. He expressed that intent and that purpose by identifying the policies and by saying "Each of these three policies is being made payable solely to my wife." Thereafter the policies and the will were in his possession, he gave the policies to his

wife and did not change or revoke his will. Of course different and perhaps more definite language could have been used in the will, but we think the language used must be given the meaning that it changed the beneficiary in the policies. In a case where the testator said:

"I have a $5000.00 policy double indemnity, that I want to change the beneficiary from Mrs. W. M. Eickelkamp to her father."

and the policy contained the following provision:

"If the right of revocation has been reserved, the Insured may at any time, while this Policy is in force, by written notice to the Company at its Home Office, change the beneficiary or beneficiaries under his Policy, subject to any previous assignment; such change to take effect only upon endorsement of the same on this Policy by the Company, whereupon all rights of the former beneficiary or beneficiaries shall cease."

the Supreme Court of Arkansas said:

"It is argued that in saying he wanted to change the beneficiary did not constitute a change of the beneficiary. Or that the language used was not tantamount to changing the beneficiary. If he did not intend to change the beneficiary by the language employed then it was idle ceremony on his part to refer to the policy at all. Certainly he did not mean to say that at some future time he intended to make the change. The language used in the other parts of the will does not support such an intention on his part." Eickelkamp v. Carl, 193 Ark. 1155, 104 S.W. 2d 814, 815.

What we have said requires that the part of the trial court's judgment appealed from be reversed. It is reversed and judgment is here rendered awarding appellant, individually, recovery of the amounts due under the two policies of insurance sued on, less of course the amount of the attorney's fee allowed the insurance company.

Reversed and rendered.